## STERNS vs. WEATHERS, ADM'R, &C.

[ASSUMPSIT BY WIDOW AGAINST ADMINISTRATOR OF DECEASED HUSBAND.]

1. *Woman's law of 1848 not retroactive.*—The act of 1848, securing to married women their separate estates, does not affect the husband's right to reduce to possession choses in action belonging to the wife which accrued prior to the passage of the act.

2. *When legacy accrues.*—Where the testator's estate is able to pay all his debts, the expenses of executing the will, and specific legacies, a legatee's right to a pecuniary legacy accrues at the moment of the testator's death, although he may then have no right to demand payment.

3. *Husband's right to wife's choses in action.*—At common law, and in this State prior to the passage of the "woman's law" of 1848, the husband acquired, by marriage, the right to reduce to possession, at any time during the coverture, his wife's choses in action, and thereby become the absolute owner of them.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by Mrs. Jane Sterns, the appellant, against the administrator of Samuel Weathers, deceased, who was her former husband, to recover $500 belonging to her separate estate, alleged to have been received by said Weathers on the 8th November, 1849. The bill of exceptions, which presents all the facts of the case, is as follows:

"The plaintiff proved, that in 1847, and from that time until the death of defendant's intestate, which occurred in Barbour county in 1852, and for some years prior to 1848, plaintiff and defendant's intestate were domiciled in this State as husband and wife, she having been the wife of said defendant's intestate; that in January, 1848, the will of Uriah Helmes, who died in Muscogee county, Georgia, in 1847, and who was plaintiff's father, was admitted to probate in Georgia, and plaintiff became entitled to a legacy of $500 under said will; that on the 8th November, 1849, defendant's intestate received said legacy in full from the executors of said Helmes in Georgia, and

executed therefor a receipt as follows": (The reciept is in the usual form, and requires no further notice.) "It was shown, also, that said Weathers had appropriated said sum to his own use, and that the defendant was his administrator. Upon this state of facts, conceded by both parties to be true, and there being no other evidence in the case, the court charged the jury, that the plaintiff was not entitled to recover in a court of law, and that they must find for the the defendant; to which charge the plaintiff excepted," and which is now assigned as error.

PUGH & BULLOCK, for the appellant.

L. L. CATO, *contra.*

STONE, J.—It may be conceded, without affecting the result of this case, that at the time the woman's law went into operation, March 1, 1848, the marital right of Samuel Weathers had not attached to the pecuniary legacy of five hundred dollars, bequeathed to the plaintiff under the will of her father. In November, 1849, he did reduce the legacy to possession; and the question is, did the act of 1848 take away his right, as husband, to do so?

The act of 1848 does not operate on rights which existed at the time of its enactment.—See Manning v. Manning, 24 Ala. 386. That portion of the statute, which, it is thought, bears on this question, is in the following language: "If any such estate shall, after marriage, by descent, gift, demise, or otherwise, accrue to any woman," such property is her separate estate. When did this property accrue to the plaintiff? The answer must be, at the death of the testator; because, if she had died the next day, the legacy would have gone to her personal representative. In other words, the legacy would not have lapsed. It is no answer to this, that probably she could not then demand the payment of the legacy. If the estate was able to pay the debts of the testator, the expenses of executing the will, and any special legacies he bequeathed by the will, her *right* accrued the very moment the testator died.—Hardy v. Boaz, 29 Ala. 168; Kidd v. Montague, 19 Ala. 619.

46

It follows from what we have said, that this legacy did not *accrue* to the plaintiff after the statute of 1848 was passed; and hence the plaintiff can claim no rights under its provisions. Both the marriage of the plaintiff with Mr. Weathers, and the death of the testator, dating before March 1, 1848, the marital rights of Mr. Weathers must be determined by the common law. Under that system, he acquired by his marriage the right to reduce, during the continuance of the coverture, his wife's choses in action into possession, and thus become the absolute owner of them. He did reduce this fund to possession during the coverture.—See Pickens and Wife v. Oliver, 29 Ala. 528, and authorities cited.

The circuit court did not err, in holding that the plaintiff could not maintain this action; and its judgment is affirmed.